Ivis Alexander-Mendozavs voters versus Attorney General. Mr. Monahan. Good morning, Your Honors. Ryan Monahan on behalf of the petitioner Ivis Alexander-Mendoza. With permission of the court, I would like to reserve two minutes for rebuttal. Okay, done. Thank you, Your Honor. The court issue in this case is whether Mr. Mendoza knowingly and intelligently waived his right to appeal the immigration judge's decision. Leading up to that issue, there were multiple errors and violations of Mr. Mendoza's due process rights that ultimately led to this unknowing and unintelligent waiver of his appeal. Those due process violations included ineffective assistance of counsel prior to the merits hearing and at the merits hearing, a complete absence of counsel. Now, assume we thought you were correct about that, Mr. Monahan. We thought this was mishandled by Mr. By the way, it is Mendoza-Clotars, right? Am I saying his name right? Yes, Your Honor. Mr. Mendoza is also perfectly acceptable. Okay. But we thought that his first lawyer had not handled the withdrawal properly. The immigration judge had not handled that withdrawal properly. And we thought that his first lawyer had not handled the withdrawal properly. He hadn't been given appropriate notice of right to counsel after that. Assume we thought all that was right. Help us understand how that vitiates unknowing and voluntary waiver of an appeal right, if we thought it was knowing and voluntary. Absolutely, Your Honor. And I think there are two ways it helps inform the unknowing and unintelligent waiver. The first is it provides the entire context for the unknowing and unintelligent waiver. The second is it provides the entire context for Mr. Mendoza's handling of the appeal, which he was just unable and unequipped to do with his sixth-grade education coming from Honduras. That ultimately led to errors at every stage, and he didn't suddenly get it right when it came to the waiver of appeal and understood what's going on. So that, it provides the context. The second is counsel there would have absolutely helped him make a knowing and intelligent waiver. The Ninth Circuit in Biwate v. Gonzalez... This is a discussion that would give you all that. Help us zero in on, though... Well, I guess the way to ask this is, is it impossible to make a knowing and intelligent waiver of an appeal right if you don't have a lawyer? It is not impossible, Your Honor. And this has always been a facts and circumstances test, and it's a facts and circumstances test here. The facts and circumstances show that Mr. Mendoza was completely unequipped and misapprehended what the unknowing and unintelligent waiver was. And that's what the immigration judge was speaking about when talking about the waiver of appeal. And if we go to... And if that's so, that's true whether he had a lawyer before or not. That's true whether he had been properly advised by the immigration judge earlier or not. Those things are, they're not good things, but if he was ignorant and ill-equipped with a sixth-grade education to do this, doesn't that stand independent of those other things? It completely does, Your Honor. I would consider it an additional point that weighs in favor in DeWalt v. Gonzalez, the Ninth Circuit called this a double shadow. The first shadow was you misapprehended what the waiver was. The second shadow was there was not counsel present to actually help the claimant decide that issue. That first shadow could absolutely stand on its own, and it absolutely stands on its own here. When Mr. Mendoza was informed of his right to appeal, we had the error of Ingray Rodriguez-Diaz. He was notified of his right to appeal, and then the court said you can waive that or it's final today. That was the error in Rodriguez-Diaz, and all we got after that was an explanation of a collateral consequence, not an explanation of appeal. So the immigration judge went on to say that if you decide to appeal, you'll stay in detention. You could, if you choose to waive your appeal, you have deportation. In Mr. Mendoza's mind, all he was deciding between at that point was detention or deportation. How could the judge, what should the immigration judge have said? Because at that point, it looks like the immigration judge is trying to explain to Mr. Mendoza Cloders, you don't have to waive your appeal. You've got an appeal right. If you do, here's the real world consequence. It may take some time, and you're going to stay in custody. Is it wrong for the court to advise somebody of that so that they understand and can weigh the costs and benefits? And the immigration judge here started to paint the picture of an informed, intelligent decision, and so certainly not knocking the immigration judge providing that explanation. The problem was it was an incomplete picture, because the other side is what you lose by waiving your right to appeal. You lose the right to challenge the immigration judge's decision, and as a result, lose the opportunity for entitlement to relief. Isn't that all like right in the idea of appeal? If you waive your right to appeal, you're done. I mean, even with limited education, don't you have to attribute something to those words that a person of ordinary intelligence could apprehend, which is I'm waiving my right to ask somebody about whether this was right or wrong? Well, Your Honor, I don't know if we can make that assumption. Just like we couldn't make that assumption with the term final, which the court recognized as a shorthand term that might not alert someone to the gains and losses that come with finality, appeal has a lot of context that we as lawyers are familiar with. But someone like Mr. Mendoza, who, by the way, in the same paragraph of this monologue from the court, just learned that he lost his decision, heard that he had this right to appeal. He then received five minutes to assess what that right to appeal means. But it was painted with that incomplete picture of it means that if you waive this right, you're deported. If you don't waive this right, you have to stay in detention. And that is the error here. Because of that lack of explanation, Mr. Mendoza's only understanding of the waiver of his right to appeal was a decision between staying in detention and going back to Honduras. This is not a considered understanding of what is at stake, because at no point was this decision to tie to the fact that if he stays, he has a right to challenge his decision and could be successful in that challenge. So can I just ask you a question about what you think the role of Rodriguez-Diaz is? I read it, I thought what it said was someone facing removals, ignorance of the immigration laws, is not necessarily a basis to find error with what the immigration judge decides or rules in certain cases. And if that's right, then isn't your argument really resting on your client's ignorance of the consequences of certain immigration laws? And doesn't Rodriguez-Diaz kind of tilt against you? I know that you seem to think that that case works for you, so I'm curious to hear kind of your perspective there. Absolutely, Your Honor. And no, I don't think Rodriguez-Diaz weighs against us here, because Rodriguez-Diaz said, yes, it's a complicated system, we can't expect immigrants and claimants to have a full comprehensive understanding of that system. What it also said was that an immigration judge, in order to effectuate a knowing and intelligent waiver, has to not rely on shorthand terms that an unsophisticated claimant is not going to be able to comprehend. In Rodriguez-Diaz, the fact that the immigration judge notified the claimant of the right to appeal, but then just said at the end of the hearing the decision is final, do you accept it as final, was insufficient to alert them to the rights as to what they were appealing. Courts have gone on to hold a similar effect where when you simply just notify a claimant of their appellate options and then alert them to a final, that is insufficient. Here the immigration judge said, and I'll quote, I just want you to understand, sir, that if you do reserve appeal, you would most likely continue, well, let me even go earlier than that. Sure. The judge said by waiving your right to appeal, what that means is your case would be final today. Isn't that an explanation that it's over? Like if you waive the right to appeal, this is final now. What's unclear about that? And, Your Honor, what's unclear about it is both what the right to appeal means and that explanation and what finality means because when you go on, finality here is conflated with deportation and detention. It is not conflated with this is the end of the line for your opportunity to entitlement of relief. And that is really what needs to be happened. That's where I'm having a little difficulty with your argument. If the district court, excuse me, if the immigration judge says, look, you can appeal, but if you choose not to appeal, if you waive your appeal rights, that's final. To date, this is it. This is the decision. And here are the consequences. If you reserve the right to appeal, you most likely remain in detention during dependency. I'm not trying to deter you from reserving appeal. I just want you to be fully, fully aware of that. And then explain a little bit more about the timing. And there's no control of the timing. And then it says, so hearing all that, what do you want to do? Do you want to reserve appeal or waive appeal? It's your right to do either. You just need to tell me what you want to do. In that context, having explained that if you're going to waive your right to appeal, then you're going to be gone because she's just told them what the consequence is. You're going to be deported, removed. What additional thing needed to be said to this applicant to have him understand, here's my decision tree. On one leg of that tree is waive and the case is over, and I'm being sent away. And on the other end of that decision tree is, I can keep going with this, but I'm going to be in custody while I'm pursuing those rights. What more should she have said or was required to say to help him understand, this is the juncture you're at and this is what those two roads look like? Your Honor, so I will quibble with one of those roads, which is the final road. Final, as we know from Rodriguez-Diaz, is not sufficient to alert a claimant of the fact that the case is done, they have zero entitlement to relief. That is the explanation that is needed in order to provide color on final. Simply conflating it with the detention versus deportation paints a picture, and that is something certainly an immigration judge can provide a claimant with to give them the appropriate context, but it's that additional step. And no greater evidence of this exists than throughout the record, once we get that explanation. Mr. Mendoza? I'm so sorry to interrupt, because I totally get your point on Rodriguez-Diaz, right? If the immigration judge just said, hey, look, I want you to know that if you waive, things will be final, full stop, nothing else, you would have a great Rodriguez-Diaz case, right? That's, as I read Rodriguez-Diaz, exactly what that case is. Here, the immigration judge goes on, it says by waiving a right, what that means is your case should be final today. If it stopped there, then you might have a Rodriguez case, a Rodriguez-Diaz problem. But then it goes on to say, the judge goes on to say, quote, and I just want you to understand, sir, that if you do reserve appeal, you would most likely remain detained during the pendency of your appeal. I'm not trying to deter you from reserving appeal. I just want you to be fully, fully aware of that. I don't know how long an appeal will take. I will tell you that in other cases I've seen it seems to be taking, in some cases, could be up to a year. I just don't know, quote. So something more than Rodriguez-Diaz was provided, right? And so the question is, what about this more that was provided is still deficient in your mind? That's at least how I'm viewing the case. Your Honor, I completely agree with that framework, with the exception that courts have gone on, specifically the Fourth Circuit and Noreen V. Holder, that's 559 F3D246, have gone on to say, even when you connect that appeal with final and it's in that same sentence, that is not enough necessarily to alert a claimant of the fact of a knowing and intelligent waiver or to create a knowing and intelligent waiver. So it is correct that something more is needed as well, and that more was not provided here. It was the only thing that was provided was this deportation versus detention ultimatum, not the further explanation of loss of entitlement to relief. So let me just fill in. When you say what is more provided, like what would that be? Would it say in an appeal you could challenge the findings that I've made today under, what, substantial evidence? How much more do we need? Do we have to talk about de novo review, substantial evidence review? Do we just need to say it would be final and, you know, and you would not have the ability to pursue further administrative repeals or redress in court? If they would have said that as well, would you be satisfied? Or would you still fall back on overall context of the IAC and the lack of counsel and all those other things? Or if they said that additional point, would you think that would kind of cure any of those other deficiencies that you've identified? So to take the kind of last iteration of it first, which is you have a right to seek redress from a court of the immigration judge's decision and the right, if successful on that challenge, you could potentially receive another hearing or entitlement to relief. That would likely be sufficient, although I do not want to suggest some sort of magic words. Just based on the facts and circumstances here, that kind of additional explanation of what you lose needed to happen, and it didn't happen here. And I see that my time is up, Your Honors, if there are further questions. Well, I do have one, and it's maybe repetitive, but I think you're getting this from both of us. What's the more when you say something more needed to be done? What would it, what, hey, give us a, you want us to send this back. And presumably, if we did that, we would be given directions to the system of how to do it right. What's the thing that was lacking here that we would have to say next time, do this thing? What's the thing you're asking us to tell them to do? That, to me, is an explanation of what an appeal is. Challenge the decision I made. That challenge could be potentially successful, which would entitle you to relief or entitle you to a new hearing. That kind of explanation. That extra sentence would have made the difference. That extra sentence certainly would have helped here, because that would have provided the scales of the pros and cons as to what I gain and what I lose, and that is the kind of analysis a knowing and intelligent waiver would have to have. So let me just ask you about the opening phrase, at least the relevant passage. The immigration judge says, quote, you do have a right to appeal to the higher court, the BIA, the Bureau of Immigration. Or you can waive your right to appeal. By waiving your right, what that means in your case would be final today. So I guess what I'm saying is, although the final today stops that kind of initial train of thought and afterwards it gets to what you're calling kind of the consequences or what I'm hearing you call the consequences of finality for deportation, not the consequences of additional procedure, which you make a very apt distinction between the two, right? But why doesn't that initial context, that arguably might be more helpful the way that the immigration judge framed it, to say you can go to a higher court, but if you don't, you're done now. Doesn't that remove us from Rodriguez-Diaz? I don't think so, Your Honor, and I just think that is not the kind of articulation that an unsophisticated claimant would comprehend, that this means that I could continue to pursue my case and potentially get denial of, grant of relief. And I, just one final note there, Your Honor, is that that is coming off the tails of him finding out that he was denied relief, and it's coming in the same monologue. He had five minutes to break this apart with his girlfriend. He just was not equipped in this situation to knowingly and intelligently waive his right to appeal. If the dialogue had been exactly the same, but he had been represented, would you be making this argument? It would be a lot tougher to make, for sure, Your Honor. Even though you said at the outset that it's not impossible to waive without a lawyer, it really sounds to me like, if we accept your argument, every alien who doesn't have a lawyer is going to win the same case. I would actually flip that, Your Honor, where it is very hard when counsel is present to win these types of cases. I don't think that the court needs to – I said every applicant who doesn't have a lawyer. And so on that, Your Honor, I don't think that is correct because there are going to be circumstances where the claimant is sophisticated, where they are a repeat player, where they perhaps have a law degree in another country, that they would be alerted to what appeal means. But in the mind run of these cases that we see, those aren't the applicants. They're people like Mr. Alexander Mendoza. And it speaks to the additional step, which would add at most maybe ten minutes to this hearing, that an immigration judge needed to make in this particular case to make a knowing and intelligent waiver. Your Honor, that's probably correct.  Thank you. Thank you very much, Mr. Monahan. Good morning, Your Honors. May it please the Court. Jeffrey Hartman appearing on behalf of the Attorney General. Your Honors, in this case, Mr. Alexander Mendoza has to show that the evidence compelling – Is it Alexander Mendoza or is that just bad captioning? It's Mendoza-Cloters, isn't it? I want to say the man's name right. Sure. He's used multiple aliases. The agency decision is Alexander Mendoza. I'm happy to use whatever the Court would prefer. We'll just go with Mendoza or Mendoza-Cloters because I think that's the appropriate matronymic. Yes, Your Honor. Mr. Mendoza. But go ahead. With that in mind, why don't we start with this. Is it irrelevant that the immigration judge – and I take it that you don't even dispute this, but maybe I'm wrong about that – that the immigration judge didn't provide the information required to be provided to Mr. Mendoza-Cloters about right to counsel? Do you think in the procedural posture of this case that it is irrelevant? But you don't disagree that that was an error, right? True, and if he had appealed to the Board of Immigration Appeals, he could have challenged that error and corrected it. And the way this went down was pretty disturbing. Without him present and on the say-so of his lawyer and nothing else, the immigration judge excused this guy and Mendoza-Cloters doesn't find out about it until apparently practically the day of when he's saying, I just found out my lawyer can't be with me today. It appears he doesn't even understand at that point that he doesn't have a lawyer. And yet the judge is like pedal to the metal. Is all that irrelevant? Does that have nothing to do with what happens next? I think as the Board found at AR-4 that Mr. Mendoza didn't connect his ineffective assistance of counsel claim with the withdrawal of Mr. Lupton in November of 2020 to his eventual waiver of appeal. At AR-118, he acknowledges that Mr. Lupton has withdrawn from his case. And the immigration judge tried to move his hearing up to that morning. And he explained that he had witnesses prepared and was ready to go forward, but needed to do so that afternoon. So I think the record shows that he was aware that Mr. Lupton had withdrawn. And I think that there is a factual dispute with respect to that issue, which the Board didn't reach because Mr. Mendoza waived appeal. But at AR-402, I think the proper remedy for addressing that ineffective assistance of counsel claim is to file a motion to reopen with the immigration judge, which is what the Board explained. And some of the lasagna things that were missing in this case is an affidavit from counsel explaining. But I acknowledge that the record is not perfect because of the quarantine situation at the hearing where Mr. Lupton did withdraw. But he's not precluded from addressing that ineffective assistance of counsel claim before the immigration judge. He just can't do it before the Board because he waived his right to appeal. So, again, my question to you is, as we're looking at the facts and circumstances of the case, your colleague, Mr. Monahan, says that's background information. That's another shadow on this decision. Is it? And is it one we should be paying attention to? Or should we just say, you know what, who cares whether you knew whether you had a right to counsel or not? Not really important here. I think it is. So Mr. Mendoza was in removal proceedings before. In 2008, he got voluntary departure, which means he necessarily waived his right to appeal. This was the second time in removal proceedings. And he didn't need that advisal because he showed up at the first hearing having already retained counsel, who was with him through the first three quarters of the case, who filed a counsel application for relief, submitted evidence on his behalf, gathered letters and statements from witnesses, which the immigration judge ultimately relied upon. So, Mr. Hartman, are you saying we should be paying attention to stuff, but the stuff we should pay attention to in the whole is not favorable to Mr. Mendoza's quotas? It's not that everything that preceded the waiver is irrelevant. It's that we should look at it, but when we look at it, we'll be satisfied that he's a frequent flyer, and so he knew what was going on. I think to win Mr. Mendoza quotas needs to identify factual evidence on the record that ties what happened before the January hearing to the exchange that he had with the immigration judge at AR 163 to 165, where she explained his appeal rights. As the board explained, there's no connection between... Let me interrupt because I understand what you're saying, but I'm not sure it's responsive to the one question I'm trying to ask. Do you think as a legal matter is what happened before he makes a waiver irrelevant or not? If we accepted what you said and that this was a knowing and intelligent waiver, does any of that earlier stuff matter or not? No. Because if it matters, then I want to get into this with you, because right now it sounds like you're arguing it matters, but it really weighs in favor of the government's position, which is it? No, I think it doesn't matter. I think the court should be focusing on the exchange between the immigration judge and Mr. Mendoza quotas at AR 163 to 166. Let me just ask this. If the immigration judge did a model colloquy here to just kind of explain every single right, says next you can go to the BIA, the BIA is typically a three-member board, and explained everything in just fine, fine, fine detail, and it became a model layout of what would happen, that would seem to break the chain from any claim of ignorance or misunderstanding that happened beforehand, because it's a model colloquy. But as the colloquy drifts away from model and begins to be more expedient, it seems that then we have to take into account the context of that colloquy a little more, because it is sub-model. And so I guess in responding to Judge Jordan's question, you said that any waiver will do it. And I guess my point is maybe that's true if it was a beautiful model waiver, but is that still true if the waiver might get us technically past Rodriguez-Diaz? But shouldn't we still look back to see that just because it's technically past, there could be those other events that would color our evaluation of knowing and volunteering? So I don't think that there is any case that I found where the agency is required to set forth the appeal rights in that degree of detail. I'm glad you brought up the model waiver in the matter of Rodriguez-Diaz, because the immigration judge's advisal here pretty closely mirrors that, other than she didn't include a 30-day deadline. But in that case, which the board identified as a model, the board doesn't go into, Judge Phipps, as you've described, like a clear air review. We can review these issues de novo if you prevail at the board. Those types of advisals aren't present in any of these courts' cases. As this court said in Doe, which involved a detained non-citizen, what's important is that the non-citizen understands that they have two options. They can appeal to the Board of Immigration Appeals, or under the finality regulation, if they forego that right, their decision is final. And I think what's really important here at AR-166, after the five-minute recess where Mr. Mendoza-Clotars consulted with a friend, family member, I'm sorry, about his appeal rights, and he informed the immigration judge that he wished to take her deportation order, she went back and clarified that if he accepted, waived his right to appeal and accepted her decision as final, he could not change his mind. And I think under the matter of Rodriguez-Diaz, that's the focus. There's confusion when the agency speaks in finality, because that's a confusing term. And I think, you know, in a scenario where the immigration judge rested on that term, I think it would be incumbent upon the immigration judge to go into great detail about what that term meant. And here the immigration judge didn't rely on it. She explained it at AR-163, that if he waived his decision, it would end that day. And then after he informed her that he wished to waive his right to appeal, AR-166, she followed up and made sure that there was no change in his mind and going forth on appeal. And this Court's cases in Doe and Bile all say that that's sufficient. Is there a factual component here? I mean, you were talking about circumstances and facts and everything. What's the standard of review that we have to employ when looking at the determination that he could waive, that he could, in fact, have this knowing and intelligent waiver, as the immigration judge evidently found? It is substantial evidence review, as the Second Circuit explained in Ali and the Fifth Circuit held in Kowarin. Okay. So substantial evidence. Tell us what specifically is the substantial evidence that supports the assertion that this was a knowing, voluntary, intelligent waiver? Sure. I think at AR-163, as Judge Phipps was reading, the immigration judge explained that she was issued. Well, to back up, she— That's the key. That's that paragraph that begins with, you do have a right to appeal, and sort of ends with, do you want to take two or three minutes, sir? Yes. That's the key. I think it's that, that the immigration judge, when off the record, gave him an opportunity to consider those options, which he knew about at that point. Two or three minutes. You've got 180 seconds to decide your future. Well, I think the record reflects that he requested five minutes. We don't have time stamps. But even assuming it was two or three minutes, I think he was aware of his two options. He'd taken voluntary departure before in 2008. He knew what would happen if he waived appeal. He knew his two options here, and the immigration judge advised him of that. She gave him an opportunity to consider them, and I think one of the most important facts in our case is that when he accepted the waiver, she went back and clarified that he could not change his mind if he wished to waive appeal. And the other thing I would point to at AR-163 that we didn't get to is that the immigration judge isn't pressuring him to waive appeal. Her default position is that if he's not sure, I'll just reserve your right to appeal and we'll proceed that way. Or we can have a couple of minutes. So her default position in this case was... When you say she wasn't pressuring him, and I read what she says, and she does say, I'm not trying to deter you, but is there no pressure inherent in, you can appeal, but you've been in jail for a long time. You're staying in jail maybe for another year. Is that problematic at all? Go ahead and appeal, and you're going to stay in the can for months, maybe a year. Is there any coercion in that that we should be concerned about? I don't think so, Your Honor. If it was untrue, then I would think the court should have concerns about the validity of a waiver where an immigration judge misadvised someone. Those are like the Ninth Circuit cases like Garcia, where the immigration judge erroneously says, you have an aggravated felony conviction, so you can't apply for anything, so I have to order you removed. I think if the immigration judge misled him about the detention, that would be a serious problem. But in this case, she gave him— How does she know he's going to remain in detention? Does he have rights to seek release, some kind of bail? If he had said, I want to pursue my appeal rights, does that prevent him from seeking some kind of interim relief and release pending the appeal? I want to be careful because the bond proceedings are separate from the removal proceedings. But in the ordinary course, when a noncitizen appeals, their bond determination, a redetermination to the Board of Immigration Appeals, the immigration judge is notified, and there's a bond component of the file. So in advising him— So there was a—I'm trying to zero in on what you just said a minute ago, which is something I've been wondering about. How does the immigration judge know he's going to stay in custody for up to a year? In saying that, isn't the immigration judge making some assumptions and putting some pressure on that is not necessarily going to be the case? It's a statement, you're going to stay in prison until this is over if you take appeal, when that's not necessarily going to be the case, is it? True. I mean, I think the immigration judge was equivocal. She said, you may be detained and it may take up to a year. I don't know. With respect to the bond, it's not in the record, but ordinarily, in the ordinary course, the immigration judge would know whether or not Mr. Mendoza-Clotas had appealed his bond and whether he had any foreseeable prospects of being released on appeal to the board. So I think that's what she was alluding to. She likely knew that he had filed no bond appeal, and in fact he was detained through independency of all of these proceedings. And so there is certainly some, you know, Mr. Mendoza-Clotas did not have good options. His options were to waive appeal or to appeal, and either way he would be detained during those options. And the immigration judge correctly advised him of those two consequences, and it was his decision to make. He knew it was his decision. He'd made it before. And our submission is that no evidence compels reversal of the board's finding that his waiver of appeal was known involuntary under these circumstances. I'm happy to answer any other questions the board has. Judge Phipps, anything else, sir? No, nothing further. Okay, thanks very much, Mr. Anderson. Thank you. Just very briefly, Your Honors, I would like to pick up on the point that you last left off with my colleague, which is this thumb-on-the-scales point where the immigration judge can be viewed that colloquy in one way, which is it painted an incomplete picture, and it failed to apprise Mr. Mendoza of his right to appeal. The other way is it's also an inaccurate picture. Mr. Mendoza does have rights to bond redeterminations that he can seek and have status reevaluations that would allow him to be released during the pendency of an appeal. Isn't there a third way to look at it, too, which is just an immigration judge who wants a person to know, and the likelihood is, having not already sought a bond appeal, this can take a while and you can stay in prison. You should be thinking about that. I mean, would you be making just the same sort of argument if she hadn't said that? Like, she didn't tell him. She should have told him, you're going to stay in prison. I'm trying to think about what it is, like, how we can't really micromanage the immigration judges and put them in a damned-if-you-do, damned-if-you-don't circumstance, which is, I guess, why we have this substantial evidence standard of review. And when we face that substantial evidence standard of review, what's wrong with the BIA saying, look, they didn't say this, but, in effect, this might not be perfect, but it's good enough. There's enough evidence here for us to feel satisfied he knew what he was doing. If we're true to the substantial evidence standard of review, why isn't this paragraph on AR163, particularly in light of the subsequent statement, which Mr. Hartman pointed to a couple of times, enough? And, Your Honor, so just kind of beginning with it, it is not sufficient to establish the substantial evidence standard. We have the first error, which is the simple reiteration of that it would be final today. As discussed, that's insufficient. The discussion of the bond can either be viewed as incomplete or incorrect. I started with the incomplete because I think that is the better argument here, that this simply did not apprise Mr. Mendoza of his appellate rights. And then when you proceed through the record, it's merely a repetition of the same question of you have a right to appeal, and that means it's final today. That is insufficient to alert Mr. Mendoza of his rights and, therefore, wasn't knowing an intelligent waiver. We haven't talked about these lines from the record, but when he makes his decision, she says, I recognize that. I just want you to make sure that if you do accept that it's final today, it is final, and you can't later change your mind and say you want to appeal the decision. Is that enough explanation about what finality means? And is it, Your Honor, because it's from the same incomplete picture, which is an explanation of what he's losing, and it's merely an explanation that if you can't change your mind, which is an ordinary description of final, it is not an explanation of what he's losing by making it final and not changing his mind. So just as a baseline, and it doesn't apply, but as a baseline, a lot of times when we talk about a person's waiver, we talk about a change of plea in the criminal context, Federal Criminal Rule 11, and there's about 15 items that the trial judges have to go through, and it's a lot. And if they don't do it and they have to go to each one of those and explain what those mean, it sometimes takes up a half an hour to do one of those. But those are all rule-driven points that are designed to give a real package of completeness. We don't have that same degree of specificity in the regs, and I don't think that there is a holding that says every single one of those Rule 11 points is necessary to get a knowing and intelligent waiver. And so I guess what I'm kind of going to is this notion of it seems that we tolerate some degree of incompleteness in these waivers. And you've identified areas of incompleteness, and I agree with you. I think those are incomplete. The question is, don't we kind of talk, we don't have the equivalent of Federal Criminal Rule 11 here. And so because we don't, that suggests that not only is it not a criminal matter, it's still a very important matter, but it's not a criminal matter, that we tolerate some degree of incompleteness before we evaluate knowing and voluntary. And so if that's the case, then it seems that maybe some of these matters on the bond or the ability to reopen a proceeding and all the other things that would, if there was the analog to Federal Criminal Rule 11, you could imagine putting in, and it might total 15 in this context as well. But we don't have that. And so in the absence of that, it's hard. What we have is Rodriguez-Diaz, which says finality is not enough. And it seems to suggest if you just go a little more, we're good. And so where is this sweet spot? You aren't advocating for a Criminal Rule 11 standard, right? I am not, Your Honor, no. And the Criminal Rule 11 standard is a great way to make sure that this is more than knowing and more than intelligent because it is hitting every single checkpoint. Here, our lodestar is the baseline, which is the waiver has to be knowing and intelligent. And we're operating on that baseline. And when we operate on that baseline, we get cases like this, which is a poor explanation to someone who was unsophisticated to handle it. And the immigration judge sure tried to provide that explanation, but when that explanation is incomplete, that has to lead to an unknowing and unintelligent waiver because Mr. Mendoza simply was not apprised of the decision he was making and how that may affect the outcome of his appeal. Okay. Thanks very much, Mr. Mahin. I appreciate counsel's argument today. We've got the matter under advisement, and we will call our next case.